UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL WALTER DUPREE,

    Petitioner,

v.                                          Case No: 8:13-cv-0387-CEH-AEP

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition and Respondent's response (Dkt. #6). Upon review, the Court concludes that the petition is without merit and should therefore be denied.

## BACKGROUND

Petitioner Michael Walter Dupree ("Dupree") was charged with burglary and possession of cocaine. On August 13, 2008, a jury found him guilty of the burglary offense. On August 20, 2008, he pleaded no contest to the possession of cocaine charge. On the same day, the trial court sentenced Dupree to twelve years in prison with a ten-year minimum mandatory sentence as a violent career criminal on the burglary charge and to 32.7 months in prison on the possession charge.

Dupree pursued a direct appeal, and his attorney filed an *Anders*[1] brief indicating there were no meritorious issues for review. The Florida Second District Court of Appeal per curiam affirmed Dupree's convictions and sentences. *See Dupree v. Florida*, 23 So. 3d 1233 (Fla. 2d DCA 2009).

Dupree next filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, arguing that his trial counsel was ineffective because he:

1. failed to voir dire four hostile and biased jurors;

2. tainted the jury pool by stating during his opening voir dire comments that "Mr. Dupree's liberty is at stake today;"

3. failed to investigate and evaluate Dupree's mental health issues before proceeding to trial;

4. failed to call a fingerprint expert to refute the testimony offered by the prosecution's inexperienced witness and conceded that the prosecution's witness qualified as an expert;

5. failed to impeach the prosecution's key witness; and

6. failed to call three witnesses who would have impeached the testimony of the prosecution's key witness.

The state postconviction court denied his motion. Dupree appealed, and the Florida Second District Court of Appeal per curiam affirmed. *See Dupree v. Florida*, 78 So. 3d 543 (Fla. 2d DCA 2012).

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

Dupree also filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800. The state postconviction court dismissed the petition and the appellate court affirmed. *See Dupree v. Florida*, 121 So. 3d 1044 (Fla. 2d DCA 2012).

Having exhausted his state remedies, Dupree timely filed the instant petition for habeas corpus relief. He raises the same allegations of ineffective assistance of counsel that he raised in his Rule 3.850 motion for postconviction relief.

## **GOVERNING PRINCIPLES**

### I. Federal Question

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may entertain a petition for writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." By alleging that he was deprived of the Sixth Amendment right to the effective assistance of counsel recognized by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), Dupree has satisfied this threshold requirement.

### II. AEDPA Bar to Relitigation

The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) (superseded by statute on other grounds). Where, as here, a state court has already adjudicated the issues raised in the petition on the merits, § 2254(d) bars relitigation, subject only to the exceptions enumerated in § 2254(d)(1) and (d)(2). *Harrington v. Richter*, 131 S. Ct. 770, 783-84 (2011).

This Court may only grant relief if (1) the state court's denial of Dupree's claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," (in this case, *Strickland*, 466 U.S. 668) or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). *See Richter*, 131 S. Ct. at 783. "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted). Also, the state court's factual findings are presumed correct and Dupree has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**III. Ineffective Assistance of Counsel under the AEDPA**

The law governing Dupree's ineffective assistance of counsel claims is well established. In *Strickland*, the Supreme Court announced a two-part test for analyzing whether a defendant was denied effective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. To prevail on this test, the "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. On the question of prejudice, the defendant "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).

Under the AEDPA, the inquiry is not whether counsel's performance fell below the *Strickland* standard. *Richter*, 131 S. Ct. at 787. Rather, "[t]he pivotal question is whether the state court's application of *Strickland* was unreasonable." *Id.* Indeed, "it is a necessary premise that the two questions are different . . . and [a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Furthermore, a petitioner fails to meet his burden under § 2254 if his claim is merely conclusory or speculative, unsubstantiated by evidence tending to establish his entitlement to relief. *See Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007) (concluding that petitioner was not entitled to § 2254 relief on his ineffective assistance claim because it was conclusory and speculative: petitioner did not introduce any evidence to support his bare allegations of deficient performance and resultant prejudice).

## DISCUSSION

Having reviewed each of Dupree's claims, the Court concludes that he is not entitled to relief. Dupree has not established that counsel acted unreasonably or that he was prejudiced by counsel's alleged deficiencies. The state postconviction court reasonably

applied *Strickland* in determining that Dupree's claims were without merit, and therefore, there is no basis for federal habeas relief.

### *I. Ground One*

In his first ground for relief, Dupree alleges counsel was ineffective because he failed to (1) adequately voir dire four hostile, biased jurors, and (2) move to strike or individually voir dire the entire jury panel.

With respect to his first contention, Dupree maintains that counsel should have questioned jurors Toske, Toscano, Treece, and Lortz about any animosity they might harbor toward criminal suspects or about bias in favor of law enforcement. He believes this was an issue because Toske was a rape victim and she witnessed a suspect being arrested in her front yard; Toscano's son was a police volunteer; Treece's son and her former spouse were officers with the Florida Department of Corrections; and Lortz worked at the Glades County Sheriff's Department and was the victim of child abuse.

At its core, Dupree's first allegation is a claim that counsel was ineffective for failing to strike a biased juror. In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. Florida,* 28 So. 3d 838, 859 (Fla. 2009) (citing *Lusk v. Florida,* 446 So. 2d 1038, 1041 (Fla. 1984)). To establish that he was prejudiced by these jurors presence on the jury, Dupree must demonstrate that they were actually biased against him. *See Smith v. Phillips,* 455 U.S. 209, 215 (1981).

When it ruled on Dupree's claim, the state postconviction court reviewed the jurors voir dire testimony[2] and denied the claim after finding that none of the jurors exhibited actual bias. This is a finding of fact that this Court must accord deference. *See* 28 U.S.C. § 2254(e)(1). Dupree has not presented any evidence to rebut the state postconviction court's finding, and therefore, this presumption remains undisturbed.

Further, having reviewed the voir dire transcript, the Court concludes the state postconviction court's determination is well-supported. During voir dire, juror Toske explicitly asserted that nothing about her experience as a rape victim would affect her ability to sit on the jury (Resp. Exh. 2, pp. 19-21). Though she was scared when she watched someone get arrested in her front yard, she noted that it was "okay" (Resp. Exh. 2, pp. 72-73). As for juror Toscano, he did not make any remarks exhibiting bias when he noted that his son was a police volunteer (Resp. Exh. 2, p. 42). Juror Treece unambiguously asserted that nothing about having family members working for the Department of Corrections would affect her ability to judge the credibility of a law enforcement officer (Resp. Exh. 2, pp. 42-44). Finally, juror Lortz stated that nothing about her work with law enforcement would cause her to lend more or less credibility to a law enforcement officer and that being the victim of child abuse would not cause her to be biased (Resp. Exh. 2, pp. 29-33).

---

[2] Dupree's allegations with respect to jurors Toske, Toscano, Treece, and Lortz are premised solely upon remarks that were made during voir dire. Therefore, the state postconviction court's inquiry began and ended with the voir dire transcript.

None of these jurors expressed anything even remotely indicative of bias. Counsel cannot be deemed deficient for failing to strike competent jurors, and Dupree fails to establish that he was actually prejudiced by counsel's actions.

Additionally, the Court notes that Dupree's contention that the jurors were actually biased against him is pure speculation and is an insufficient basis for habeas corpus relief. *See Guzman v. McNeil*, No. 09-23795-Civ-HUCK, 2011 WL 915130, at *9 (S.D. Fla. Feb. 15, 2011) ("This claim was raised in the motion for post conviction relief and was summarily denied. The summary denial of this claim was appropriate. This claim is nothing more than mere speculation on the part of Guzman. One comment by one juror asking when the trial would end shows absolutely no bias on the part of the jury.").

Turning to his second allegation, Dupree believes that counsel should have conducted individualized voir dire on all of the prospective jurors due to comments made by one prospective juror. Specifically, Dupree contends that at some point during jury selection, prospective juror Webster approached the bench and indicated that he had observed Dupree littering during the lunch break and that this observation might sway his vote. Because other prospective jurors might have made the same observation and reached the same conclusion about Dupree, Dupree believes they should have been sequestered and questioned individually.

In denying this claim, the state postconviction court made a finding that the "potential jurors who witnessed [Dupree] littering did not serve on [Dupree's] jury and appear to have been the only potential jurors seated near the window when [Dupree] was observed littering." Because he has not introduced evidence that any of the empaneled

jurors observed him littering and were biased against him, Dupree has failed to overcome the presumption of correctness that attaches to the state postconviction court's finding. *See* 28 U.S.C. § 2254(e)(1). Operating from the presumption that none of the empaneled jurors were actually biased against Dupree, the Court concludes that Dupree fails on the prejudice prong of the *Strickland* analysis.

For similar reasons, this claim should be denied because it is merely conjecture: Dupree speculates that some jurors *may* have observed him littering and that this observation *may* have influenced their respective votes. Without any indication of actual bias, this claim is patently insufficient. *See Guzman*, 2011 WL 915130, at *9.

Based on the foregoing, the Court concludes that the state postconviction court reasonably applied *Strickland* to Dupree's claim. There is no basis for federal habeas relief and Ground One will be denied.

## *II. Ground Two*

In his second ground for relief, Dupree alleges that counsel was ineffective because he tainted the jury pool during his opening voir dire comments by stating that "Mr. Dupree's liberty is at stake today." Dupree notes that the prosecution objected to this comment, and, after hearing argument on the matter, the trial court sustained the objection and admonished counsel (Resp. Exh. 2, pp. 58-61). Accordingly, Dupree argues, counsel acted deficiently by making an improper statement. Illustrating how he was prejudiced, Dupree contends "the damage was done" because the jury believed they should consider that Dupree's liberty was at stake rather than decide the case strictly on the evidence presented.

The state postconviction court properly noted that the potential prejudice caused by this comment would have been injurious to the prosecution – not the defense. Because Dupree has not established that he was prejudiced by counsel's remark, the Court concludes that the state postconviction court reasonably determined that Dupree failed to meet his burden under *Strickland*. There is no basis for federal habeas relief and Ground Two will be denied.

### *III. Ground Three*

In Ground Three, Dupree argues that counsel was ineffective for failing to have his mental health evaluated. He alleges that he has a well-documented history of mental health issues which existed prior to his arrest and which he described to counsel. Dupree further contends that counsel must have been on notice of his mental health issues because the victim in the case described Dupree as "a damn fool" based on his conduct. Dupree also asserts that counsel should have explored the possibility of an insanity defense and whether Dupree was competent to stand trial.

At the outset, the Court notes that Dupree did not attach any health records corroborating his allegations that he suffers a long history of mental health issues, and threadbare, self-serving allegations are generally insufficient to establish ineffective assistance of counsel. But even accepting Dupree's assertions at face value, his claims are without merit.

First, to the extent Dupree opines counsel should have investigated a defense of "mental health issues," it would have been insufficient as a matter of law. *See* Fla. Stat. § 775.027(1) ("Mental infirmity, disease, or defect does not constitute a defense of

insanity" unless additional elements are proven). As for the insanity defense, Dupree does not allege (let alone establish) that at the time he committed the offense, he did not know what he was doing or its consequences, or that he did not understand what he was doing was wrong. *See* Fla. Stat. 775.027(1). Dupree's conclusory claim does not establish an entitlement to relief.

Furthermore, counsel cannot be deemed deficient for failing to pursue a defense incompatible with Dupree's claim of actual innocence (his defense at trial was that he did not commit the burglary)[3] (Resp. Exh. 2, pp. 160-62, 317). *See Hannon v. Sec'y, Dep't of Corr.*, 622 F.Supp. 2d 1169, 1198 (M.D. Fla. 2007) (holding that counsel was not ineffective for failing to pursue defense theory inconsistent with defendant's theory of innocence); *see also Dill v. Allen*, 488 F.3d 1344, 1357 (11th Cir. 2007) ("[O]ur circuit maintains that constitutionally sufficient assistance of counsel does not require presenting an alternative – not to mention unavailing or inconsistent – theory of the case.").

With respect to Dupree's claim that counsel should have investigated his competency to stand trial, it is similarly deficient. In Florida, a defendant is incompetent to proceed "if the defendant does not have sufficient present ability to consult with her or his lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceedings against her or him." Fla. Stat. § 916.12(1). Dupree does not allege that this was the case. In fact, he does not even allege

---

[3] Dupree asserts this same defense in other grounds of the instant petition.

that he was incompetent to stand trial; he merely opines that based on his history of mental health issues, counsel should have investigated the issue.

Even assuming counsel was deficient for failing to look into the issue, Dupree fails to show resulting prejudice. "In order to demonstrate prejudice from counsel's failure to investigate his competency, petitioner has to show that there exists at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (internal quotation marks omitted). At trial, Dupree stated under oath that he understood the proceedings and was able to interact appropriately with the court (Resp. Exh. 2, pp. 311-321). He has not presented any evidence indicating the opposite. Dupree "cannot satisfy *Strickland's* prejudice prong with mere speculation or conclusory allegations." *Tittle v. Sec'y, Dep't of Corr.*, No. 8:10-cv-2489-T-27BM, 2014 WL 712692, at *12 (M.D. Fla. Feb. 24, 2014).

Based on the foregoing, the state postconviction court's denial of Dupree's claim was clearly a reasonable application of *Strickland*. There is no basis for federal habeas relief and Ground Three must be denied.

### IV. Ground Four

Next, Dupree contends that counsel was ineffective for failing to call a fingerprint expert to refute the testimony offered by the prosecution's inexperienced witness and for conceding that the prosecution's witness qualified as an expert. Dupree asserts that his theory of defense was that the bicycle (the subject of the burglary) was stolen from the victim's vehicle by someone other than himself. This person, Dupree continues, sold him the bike. Therefore, it is Dupree's position that the latent fingerprints found inside the

victim's vehicle were attributable not to him, but to the "actual" burglar. According to Dupree, the prosecution's expert fingerprint witness, Rebecca Wolf, had only three years of experience as a latent print examiner and had only been qualified as an expert in two previous cases, "making her too inexperienced to be qualified as an expert." He also argues that Wolf's analysis, conducted the day before trial, was invalid because it only took twenty to twenty-five minutes.

Again, this ground for relief is riddled with unsubstantiated, self-serving allegations. Dupree attacks Wolf's level of expertise but does not point to any specific infirmities in her testing methodology. He does not produce any evidence to undermine the results of her analysis, such as the competing testimony of a different expert in latent fingerprint examination. He has not shown that he was prejudiced by her testimony or by counsel's failure to proffer a different expert witness. Similarly, Dupree does not establish that there was a basis upon which counsel could object to Wolf's tender as an expert witness. She testified as to her qualifications as an expert in latent print examination. (Resp. Exh. 2, pp. 290-92). Notably, though counsel had no basis upon which to object to her qualification, he did attempt to discredit her testimony on cross-examination (Resp. Exh. 2, pp. 298-305).

Dupree's mere speculation that a different expert witness would have testified consistently with his theory of defense is insufficient to establish counsel's ineffective assistance. *See Duran*, 223 F. App'x at 875. The state postconviction court's denial of this claim was thus a reasonable application of *Strickland*. There is no basis for federal habeas relief and Ground Four will be denied.

## *V. Ground Five*

In Ground Five, Dupree claims that counsel was ineffective for failing to impeach the victim, Anthony McCoy, with his prior inconsistent statements. Dupree points to multiple alleged inconsistencies between McCoy's trial testimony and his deposition testimony, and, in some cases, the deposition testimony of Donald Mitchell. He alleges that McCoy changed the following facts for the following reasons:

1. The victim places himself away from the business at the time of the crime in his trial testimony because it will [sic] make the jury wonder why he [did not] hear the breaking into of [sic] his van.

2. Mr. Dupree (the defendant) becomes a gentleman at trial, and alleged victim McCoy "forgets" to testify that the defendant stripped off his clothes "like some mad man" in order to kill any insanity or incompetency claims of defense by the defendant.

3. The victim and his brother-in-law now [referring to the trial testimony] seem to engage in a damning conversation before the defendant begins to flee the scene. The victim's trial testimony now expands to one of "burglary of his van," "possession of stolen property," and "identification of the defendant as the possessor of the stolen goods."

When the state postconviction court denied this ground, it did so, in part, after finding there were no actual inconsistencies between McCoy's trial and deposition testimony. This factual finding is cloaked with a presumption of truth, and Dupree has not presented any evidence to strip it of that presumption. *See* 28 U.S.C 2254(e)(1). Moreover, the Court's independent review of Dupree's allegations and the trial transcript leads it to the same determination. Though Dupree contends that McCoy added additional facts or omitted certain details at trial, the substance of his testimony in both instances is the same. McCoy testified consistently as to Dupree's actions respecting the offense charged; the

differences in his trial and deposition testimony relate to tangential issues not dispositive of guilt or innocence.

Given that there were no inconsistencies between McCoy's trial and deposition testimony, it was reasonable for the postconviction court to conclude that Dupree did not establish an entitlement to relief under *Strickland*. Indeed, counsel cannot be deemed deficient for failing to improperly impeach a witness. *See Georges v. United States*, Nos. 11-22173-CIV-MORENO, 09-20616-CR-MORENO, 2012 WL 602659, at *7 (S.D. Fla. Jan. 12, 2012) ("Movant's contention is wholly without merit. There was simply nothing improper or objectionable about the demonstration. It is not professionally unreasonable for a lawyer to fail to pursue issues which have little or no chance of success, and a criminal defendant is not prejudiced by counsel's failure to pursue nonmeritorious claims or those on which they likely would not have prevailed."); *see also Duckett v. McDonough*, 701 F.Supp. 2d 1245, 1256 (11th Cir. 2010) ("[F]ailure to raise non-meritorious issues is not considered ineffective assistance of counsel."); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

With respect to Dupree's allegation that counsel should have impeached McCoy with Mitchell's deposition testimony, the state postconviction court properly noted that this was an unfeasible undertaking.[4] The Florida Rules of Evidence allow a party to impeach a

---

[4] The state postconviction court also made a finding that the proposed impeachment testimony was meaningless: Dupree claimed that Mitchell testified during his deposition that McCoy handcuffed and detained Dupree until the police arrived, but that, at trial, McCoy testified that he did not handcuff Dupree. Dupree contends this change in testimony was designed to prevent him from making an "excessive force" claim in front of the jury. Because McCoy was not a police officer, the postconviction court determined that an "excessive force" argument would have been

witness with that witness's *own* prior inconsistent statement. *See* Fla. R. Evid. 90.608(1); *see also* Fed. R. Evid. 613. This rule does not provide for the opportunity to impeach a witness with a different individual's prior statement, even if the two individuals testify inconsistently. Indeed, such an endeavor would be antithetical to the principles underlying the impeachment process. *See e.g.* 1 MCCORMICK ON EVID. § 34 (7th Ed.) (noting that the primary purpose of impeaching a witness by prior inconsistent statement is to attack the credibility of *that particular witness's* testimony); 2 MCCORMICK ON EVID. § 251 ("Yet, with inconsistent statements, the witness by definition has changed his or her story.").

Quite simply, counsel could not have impeached, by prior inconsistent statement, McCoy with Mitchell's deposition testimony. It was certainly reasonable for the state postconviction court to conclude that counsel was not ineffective for failing to engage in objectionable conduct. *See Georges*, 2012 WL 602659, at *7.

Based on the foregoing, the Court concludes that Dupree has not presented claims entitling to him relief under § 2254, and Ground Five will be denied.

### *VI. Ground Six*

In Ground Six, Dupree contends that counsel was ineffective because he failed to call three witnesses in order to further impeach the testimony of the prosecution's key witness (McCoy, the victim of the burglary). Specifically, Dupree asserts that counsel should have called (1) Paul Word,[5] a witness who helped look for and chase Dupree, and

---

meaningless. The Court agrees with the evaluation, and counsel cannot be deemed deficient for having failed to point out this discrepancy in testimony.

[5]     In his petition, Dupree refers to this character as "Paul Woods." But the state postconviction court noted that Dupree appeared to mistakenly identify a witness by the name of "Paul *Word*" and "Paul *Woods*." Pointing to certain

who helped "them" apprehend Dupree until law enforcement arrived; (2) Officer Stanley Maybell, who filed a police report on the incident and observed two or three individuals holding down Dupree until law enforcement arrived; and (3) Arrid Green, a witness who chased Dupree and helped restrain him until law enforcement arrived.

Essentially, Dupree believes that each of these witnesses could have contributed testimony that McCoy handcuffed Dupree at the scene until law enforcement arrived. Dupree seems to imply that both Word and Green assisted McCoy in this endeavor. Had this testimony been adduced at trial, Dupree contends, it would have impeached McCoy's testimony that he did not detain Dupree.

Addressing a habeas claim that counsel was ineffective for failing to call a witness, the Eleventh Circuit asserted that "strategic choices made after thorough investigation are virtually unchallengeable. Whether to call a witness is the epitome of a strategic decision, and is one that we will seldom, if ever, second guess." *Small v. Florida Dep't of Corr.*, 470 F. App'x 808, 812 (11th Cir. 2012) (internal citations omitted). It is from this premise that the Court begins its analysis.

In finding that counsel was not ineffective, the state postconviction court noted there were no actual inconsistencies between each of these witnesses' testimony and Dupree's testimony. Further, the count pointed out that the testimony Dupree deemed critical was immaterial and irrelevant to his guilt or innocence. Upon review, the Court agrees. Nowhere does Dupree deny that he stole the bicycle at issue. Instead, he points to

---

discovery documents, the court explained that Paul Word was an individual who was present at the time of the incident and helped McCoy chase Dupree.

inconsequential details such as who said what and who was standing where when. Dupree has failed to establish that counsel was deficient for failing to call these witnesses, and, more importantly, that he was prejudiced by the omission of this testimony. For these reasons, it was reasonable for the state postconviction court to determine that counsel's performance was not deficient and that Dupree was not prejudiced as a result.

Moreover, Dupree's allegations are conclusory. Not only does he fail to point to testimony that would have been beneficial to his case, he fails to substantiate it. His bare assertions are a wholly insufficient basis for federal habeas relief. *See Small*, 470 F. App'x at 812 ("[B]eyond his conclusory statements, he did not make any showing that Boldos would have favorably testified. Accordingly, Small has failed to establish a claim under *Strickland*."). Because Dupree has not established an entitlement to relief under § 2254, Ground Six must be denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## **CONCLUSION**

For the reasons set forth above, all of Petitioner Michael Walter Dupree's claims are without merit and will be denied.

It is therefore ORDERED AND ADJUDGED that:

1. The Petition for Writ of Habeas Corpus (Dkt. #1) is **DENIED**.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL
### *IN FORMA PAUERIS* DENIED

IT IS FURTHER ORDERED that Dupree is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Dupree "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot*, 463 U.S. at 893 n. 4). Dupree has not made the requisite showing in these circumstances.

Finally, because Dupree is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

DONE AND ORDERED this 30th day of April, 2015, at Tampa, Florida.

*/s/ Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel/Parties of Record